The next case for argument is 15-3024 Howard v. Army The next case for argument is 15-3024 Howard v. Army David Clusham for Petitioner Ernest Howard. In retrospect, I think this case is a lot simpler than these two cases that we've had. At any rate, I think the reason I decided to have oral argument is because of the apparent misunderstanding and I think the totally wrong standard for mootness that was at the heart of this. What is your client seeking here? Pardon me? What is your client seeking here? My client is not sitting here. Seeking? What kind of relief does your client want? His remand to the Marist System Protection Board because the case is not moot and his retirement was involuntary. So they would conclude it was involuntary, in other words, it was in effect a discharge and then what would his allegation be? What is his allegation in this case? Well, that the grounds for his termination are illegal, that he was not terminated on merit system principles, he was terminated on a wrong standard. And then he would be seeking back pay and reinstatement? Yes. He wants to go back to work? Yes. He does? He would be reinstated? Things have changed since this happened and he is sick at the moment. I don't know whether he will actually go back to work at this point. But he certainly doesn't want to. I mean, he wants to have the opportunity to go back to work. During the process of this case, did he have that expectation or that desire, wanting to go back to work? Well, he didn't go back to work because the agency imposed the same requirement in the rescission of the removal. They imposed the same requirement that he had just been fired for. In other words, he didn't pass the physical agility test. We challenged the physical agility test as being totally inappropriate and illegal as applied to him. Really? In the first case? My understanding was the contention in the first case was simply that he should have been given more time before he had to take the test. I didn't see that you would challenge the legality of the use of the test in and of itself. Well, I represented him throughout this and one of the issues was that he hadn't been given enough time to take it. But the underlying issue is that it was a violation of 5 CFR. Was that in the first appeal, in the first case, for the first discharge, was that something that you alleged? Well, there was really only one appeal. Well, there was a second appeal that was calendared, but the issue is that he – I mean, the issue evolved into a violation of 5 CFR. I can never remember the number. It's 5 CFR. Maybe it evolved, but when you filed the claim originally over his discharge, what allegation did you make for the unlawfulness of his discharge? It was because he hadn't been given enough time to prepare for the test. Under the Army regulations, he was required to be given another year. That's correct. That's correct. You don't challenge the requirement that the test be given, do you? Yes. I mean, it eventually evolved into that because right in the time this was going on, this very issue was being litigated in an arbitration in the companion agency in North Carolina. This entire thing took place in Port Chicago in California, or Concord, California. And it's the military ocean terminal, and there's a companion terminal in North Carolina. And right at the time that this was happening, there was an arbitration going on. When that arbitration decision came down, I think in May or June. I'd like to ask you a question that takes us back to something that Chief Judge Prosser is asking you, and that's this. What is it that your client expects to win here? Well, he expects to win his job back, for one thing. His job back? He wants his job back? Does he want back pay? And he wants back pay, and he wants attorney's fees. And attorney's fees? Yes. And what else? I don't know if you could get anything else. He's working in the interim, right? So the back pay would be offset by any wages he's... Well, pardon me? He's been working in the interim, correct? He has not been working in the last few months because he's been ill. But he did work for a while. Well, is the relief you're seeking that whatever this test is called is illegal, unlawful? Yes. Is the relief you're seeking that it should not be applied to him? The regulation states that a physical requirement must be waived if the agency has evidence that the employee can otherwise perform all the essential functions of the job. So did he ask for a waiver? No, he did not ask for a waiver because that regulation... Well, why is that applicable if he didn't ask for a waiver? Because the regulation doesn't say he has to request a waiver. The regulation puts the onus on the agency that if they have evidence that he can perform the essential functions of the position, then they have to waive it. It's not something that he has to ask for. But these issues were not reached by the board, right? Yes, that's correct. I mean, we're talking about mootness here. It may not be that he has a decent underlying case, but the question is whether it's moot. And I understand your argument that they applied the wrong standard, which seems to me to have a good deal of merit. But the problem is that he resigned from his job. So it seems to me he has no case unless he establishes a constructive discharge. Even if he would have had a case if he hadn't chosen to resign and had moved forward with his original appeal. The record is clear that he did not resign. The record is clear that when he was first terminated on March 15, 2013, the day he was terminated, the director said to him, if you don't retire, then you're going to be removed. If you don't retire by March 18, the following Monday. And he decided not to retire, and he was removed. And so we appealed the removal. We filed an appeal on the removal. But he was reinstated after that. He was reinstated two and a half months later. Okay. And then, so I think Judge Dyke was talking about after he was reinstated, he retired, did he not? No, he retired as of March 15, 2013. And that is in the record. He retired because he was removed. He didn't wait around for two and a half months and then retire after they – If that's the case, why didn't he go back when he was reinstated? Because of the terms of the reinstatement letter. The reinstatement letter told him that he still had to pass the physical agility test. But he could have gone back and be reinstated and then asked for the waiver. Well, I suppose he could have done that, but the question is whether it's moot. In other words, does the reinstatement cure all of the issues that he was fired for? And they not only reimposed the physical agility test, which at that point he felt he didn't have to take at all. He could have pursued that. He could have continued to argue that the original removal was improper and that there was a live controversy as to whether he had to perform this test. But he chose not to do that. Unless you can win on the constructive removal issue, it seems to me you lose, that it's moot. Because he chose not to go back to work, right? He chose not to go back to work at that time, but there's two reasons that he didn't go back. One is because they simply reimposed the physical agility test, number one, which at that point there had been an arbitration decision from North Carolina which said that the agency had to waive this if you could perform the essential duties of the position. And this is really the core of the case and why it's a big issue that goes beyond him. Because the Army is using the physical agility test to weed out older people, to weed out people with disabilities. And that's why you see, you know... What does his personnel folder say? Does it say he was discharged? Clearly he was discharged at one point, but then reinstated. So he never showed up again once they reinstated him. So what does his personnel file show in terms of him leaving the agency? Well, but there's a second reason that he didn't accept it. Well, do you want to answer my question first? Well, I'm not so sure I understand the question as to what he did. What is his status with respect to the agency? Everybody's got a personnel file. If he was discharged, it would show he was discharged and removed. He never came back. He was reinstated and he didn't come back. So it's treated as if it was a voluntary retirement. I know, but he wasn't in voluntary retirement at that time. He had already retired because he was fired. So he would have had to undo his retirement. It wasn't something that happened after he was reinstated. So it really wasn't a constructive termination at that point. It was simply a termination. The retirement followed from his first time that he was removed. So the issue of the constructive termination, I suppose, is somewhat relevant. But that really wasn't mitigated. But he has no case here unless he can show that his retirement should be undone on a constructive removal theory, right? Well, see, the second thing in the rescission letter was they made a decision to send him to a beginning academy. This is a person who is 69 years old who had been in this business for 28 years, had been all through training. And they put in the letter of rescission that then he had to attend an academy. And that was the second reason that he gave for not going back to work. So there's these two controversies that were in that letter, which perpetuated this issue that he was going to go back to work and simply be faced with another termination. So it was not unrealistic on his part at all. He lost complete confidence in them that they didn't want him around. And he lost confidence in their ability to follow the regulations, that he really wasn't required to take the physical agility test because he could perform the essential functions of the position. And he had already completed academy training. And they had accepted him as EXCEPTED, accepted him from any further academy when the Army took over this installation in 2009. And it's a clear document in the record. Yet they told him that going back he'd have to face these other two conditions. You're well into your rebuttal. So you want to save that and let's hear from the government? Well, sure. I would like to just call the Court's attention to the mootness standard, which is not the correct standard that was adopted by the Board. They didn't correct the correct standard that you have to eradicate all of the issues that were tended to removal. So I will handle that in my rebuttal. Thank you. Thank you. May it please the Court. We respectfully request that this Court affirm the decision of the MSUB dismissal. You're arguing for the wrong mootness standard. I mean, cases like Heartland byproducts, which is our decision, makes clear that where a party in the government comes in and says this case is moot, it has to show that there's absolutely no possibility that it would reoccur. And if all we had here was a removal, it seems to me that that standard would not be satisfied. I mean, you're aware of those cases that say that? Defendant's voluntary cessation does not deprive a federal court of the power to determine the legality of the practice unless subsequent events make it absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur. That's Heartland. That standard at the time of the removal was not satisfied, was it? That standard, Your Honor, no, was not satisfied. But in the case of these, the MSUB removals, what has happened is that actions are considered moot in the context of these personal actions if they are returned to status quo ante and put back in the exact same position as they were left in. And that is what happened here, and that's why the removal action was dismissed. But as Your Honor has called that attention to, is that that action was actually rescinded. And what we do have left here is all we do really have left is this involuntary retirement appeal, which the MSBP properly found Mr. Howard failed to prove was involuntary. And having the fact that he deliberately chose not to. So it's moot because he retired and he hasn't shown that it was involuntary. Well, the removal action became moot when it was rescinded. I don't think that's true, but for the reason that I just showed to you, that's not the standard is whether it would not recur. And since they continued to assert that he had to satisfy the requirement, the controversy not only could recur, but it would recur. It wouldn't necessarily reoccur, Your Honor. Mr. Howard had several other alternatives besides satisfying the requirement. That's not the standard. The standard is not whether it would necessarily recur. The standard is whether you have shown that subsequent offense make it absolutely clear that the original wrongful behavior could not reasonably be expected to recur. You agreed that standard, I thought, was not satisfied. Well, that standard, you cannot prove certainly beyond a reasonable certainty that Mr. Howard would not be removed again, but the standard is whether or not his action was rescinded or he was returned to the status quo ante. The possibility of them removing again doesn't necessarily make it a live controversy, as the agency can bring a new adverse action. It's not a question of whether it makes a live controversy. The question is whether you have shown that the old controversy is over with. And I don't see that at the time of the removal you established that. But at the same time, he seems to have resigned and would have to establish a constructive removal in order to prevail. He can't establish a constructive removal just because he says that they wrongfully suggested he be terminated. Correct, Your Honor. That is the crux of the case at this point, is that Mr. Howard cannot establish a constructive removal because he cannot establish his retirement is involuntary in this instance. He can't prove that he really truly lacked a meaningful choice, and likewise he really has yet to prove it as the MSP probably found a wrongful act on the part of the agency. The conclusion that he did not lack a meaningful choice is clearly supported by substantial evidence. An employee is expected to come back to work and to fight. This court has laws very clear on that. Mr. Howard had several alternatives. He could have come back to work and he could have passed the PAT. The Army specifically said, come back to work. We're going to give you time to train. We're giving you 60 days. If you don't think that's sufficient, take more time. Give us an alternative proposal and come back and pass the PAT. He chose not to do that. He could have applied for a waiver of the PAT. He also chose not to do that. He could have tried to take the alternative events to the PAT, which he actually had passed a portion of the alternative events before, but he didn't even attempt to take those alternative events. Or he could have come back and attempted to challenge the PAT, either by filing a grievance under his union contract or being removed again and coming back to the MSPB, or if he thought it was a discrimination case, going to the EEOC. He chose none of those alternatives. He actually chose not to return to work, and that's why he really cannot prove under the objective standard that he lacked a meaningful choice here, and that's why he cannot prove that his retirement was involuntary. Likewise, there was no wrongful act on the part of the agency here. There's no violation of 5 CFR 339-204, as Mr. Howard suggests. That regulation does require agencies to waive a physical standard if there is substantial evidence that the employee can perform the essential functions of the job without harm to themselves or anybody else, but it's logical. First off, that's a question of fact. You must look specifically to the job requirements, compare the job requirements to the employee's abilities there, and it's logical that the employee has to be the one to request that waiver. The employee is the only person in possession of the information sufficient to request a waiver. They know their outside activities. They know what qualifies them physically to perform their essential activities, and management doesn't observe them on a daily basis. Likewise, management can't know who wants a waiver. They can't affirmatively be tasked with identifying all employees who might want a waiver and automatically apply for a waiver for them. The employee has to come forward and affirmatively seek that. Likewise, it's also not clear that Mr. Howard could do all the essential functions here. There is no evidence in the record, just his own conclusory arguments at this point. Mr. Howard's past performance doesn't reflect on his present fitness to perform, and that's the real issue here is the physical ability test is designed to ensure these police officers present. The real issue here is whether the case is moot. Correct, Your Honor. Not the underlying merits of his claim. Correct, Your Honor. What we'd say is that the point is Mr. Howard's claim is that the agency committed a wrongful act, and his retirement should have been involuntary because the agency violated 5 CFR 339204, and our position is the same as the MSB properly found that there was no violation. So he could not prove his retirement was involuntary because he failed to prove he lacked a meaningful choice, and he failed to prove wrongful acts on the part of the agency here. So that is our position here is that did he fail to prove that his retirement was involuntary. So as we say, we respectfully request that you affirm the MSVB decision because they properly dismissed his claim as moot, and they properly dismissed his entire wrong voluntary retirement claim because he failed to prove his retirement was involuntary, and this conclusion is supported by substantial evidence. Unless the court has any further questions. Thank you. Thank you, Your Honor. My final statement is that this is about mootness, and there's an involuntary retirement issue, but an appeal is not moot unless it can be said with assurance that there is no reasonable expectation that the alleged violation. Now, he's alleging this 5 CFR 339.204 and a host of other statutes and regulations in regard to this physical test that as to him, it's an alleged violation of the merit system standards. That the alleged violation will recur and that the interim belief has completely and irrevocably eradicated the effects of the alleged violation. Now, the alleged violation appears on the face of the rescission letter, and it adds the fact that he has to go to this academy that he had already been accepted from. So both of those are alleged violations of merit system standards. Otherwise, the defendant is free to return to his old ways, and the public interest in having the legality of the practices settled militates against a mootness conclusion. And I just read that from our brief, which cites two Supreme Court cases and a 2014 case from this court. Thank you very much. Thank you.